UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

BRADLEY OVERBY,           )
                          )
        Plaintiff,        )
                          )
    vs.                   )          Case No. 4:21 CV 1374 CDP
                          )
TACONY CORPORATION,       )
                          )
        Defendant.        )

## MEMORANDUM AND ORDER

Plaintiff Bradley Overby is a former employee of Tacony Corporation and a participant in Tacony's Stock Appreciation Plan (the Plan).  When his employment was terminated on January 5, 2021, he became entitled to a lump sum payment under the Plan.  Overby claims that Tacony breached the Plan by improperly calculating the amount due to him, resulting in $14,390.13 in damages.

Overby filed this case in state court, alleging breach of contract.  Tacony removed the case, claiming that this court has subject-matter jurisdiction because Overby's state-law claim is completely preempted by the Employee Retirement Income Security Act of 1974, as amended (ERISA).  Overby argues that the Plan is a bonus plan not covered by ERISA and so his state-law claims are not preempted.

As set out in more detail below, I will deny Overby's motion to remand this case to state court because I conclude that the Plan is covered by ERISA and so

any state-law claims are preempted.  The Plan systematically defers compensation until after termination or death, so it meets ERISA's definition of an employee pension benefit plan.

## Discussion

### A. Applicable Law

A defendant may remove a case to federal court if the plaintiff's cause of action may have been originally brought there.  28 U.S.C. § 1441(a).  One such category of cases is those "arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.

ERISA's civil enforcement provision allows plan participants to sue in federal court to recover benefits and enforce rights under employee benefit plans.  29 U.S.C. § 1132(a).  It completely preempts "any state-law cause of action that duplicates, supplements, or supplants" its scope and " 'converts an ordinary state common law complaint into one stating a federal claim' . . .. Hence, causes of action within the scope of the civil enforcement provisions of [§ 1132(a)] are removable to federal court."  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004) (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65-66 (1987)).

For the court to have jurisdiction under ERISA, an employee benefit plan must exist in the first place.  *See Kulinski v. Medtronic Bio-Medicus, Inc.*, 21 F.3d 254, 256 (8th Cir. 1994) (citing *Harris v. Arkansas Book Co.*, 794 F.2d 358, 360

(8th Cir. 1986)).  ERISA defines an employee benefit plan as an "employee welfare benefit plan or an employee pension benefit plan or a plan which is both . . . ."  29 U.S.C. § 1002(3).  The terms "employee pension benefit plan" and "pension plan" mean any plan that "(i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond."  § 1002(2)(A). Department of Labor regulations clarify that employee pension benefit plans do not include "payments made by an employer to some or all of its employees as bonuses for work performed, unless such payments are systematically deferred to the termination of covered employment or beyond, or so as to provide retirement income to employees."  29 C.F.R. § 2510.3-2(c).

## B. The Plan

At issue is whether the Plan is an employee pension benefit plan or, as Overby argues, a bonus plan that is not covered by ERISA.  By its own terms, the Plan was established for

> a select group of management or highly compensated employees who can make a substantial contribution to the financial success of the Company. The Plan is designed to retain and motivate these key Associates to promote the long-term performance of the Company by tying their long-term incentives to the performance of the Company's common stock and to align the interests of these key Associates with those of the Company's shareholders. It is intended that the Plan be a top-hat plan exempt from Parts 2, 3 and 4 of Title I of [ERISA].

The Plan § 1.2.  To that end, the Plan allows Tacony's CEO to grant stock

appreciation rights (Units) to "key employees who . . . have a significant

opportunity to influence the growth of the Company or whose outstanding

potential or performance merit additional incentive and reward for continued

employment and accomplishment of the Company."  § 3.1.  The value of each Unit

is equal to the difference between the value of one share of common stock on the

distribution date and the value on the participant's termination date.  § 6.2.  Thus,

the value of a participant's Units is directly related to the performance of the

Company's common stock.

The Units are 100% vested to the Plan participant unless an award

agreement specifies otherwise.  § 5.1.  The Plan only allows for the payment of a

participant's vested Units in a lump sum on the date 90 days following his

termination of employment or death.  § 6.1.  A participant who believes that he is

entitled to benefits under the Plan may file a written request to a designated

committee for such benefits.  If he does not receive a response within 90 days, he

"shall be deemed to have exhausted the claims and appeals process . . . and is

entitled to file a civil action under ERISA section [1132(a)]."  § 9.1.

## C. The Plan is an Employee Pension Benefit Plan

Applying the law to the facts, I find that the Plan is an employee pension

benefit plan within the meaning of ERISA.  The Plan only allows for the payment

of a participant's vested Units upon a participant's termination of employment or death.  Thus, the plan necessarily "results in a deferral of income by employees for periods extending to the termination of covered employment or beyond." § 1002(2)(A).  Moreover, the Plan's language indicates that its drafters intended to create an ERISA plan.  In its statement of purpose, the Plan describes itself as a "top hat plan," a plan for highly compensated employees that is exempt from many ERISA requirements but subject to its civil enforcement provisions.  *See* 29 U.S.C. § 1051(2); *Rockney v. Blohorn*, 877 F.2d 637, 639-40 (8th Cir. 1989).  It also specifically provides for the right to bring a civil action under 29 U.S.C. § 1132. And Overby is seeking to enforce his rights under the Plan, so his claim is covered by § 1132.

Overby points out features that he argues show it is a non-ERISA bonus plan:  it is only offered to a select group of highly compensated employees, a Unit's value is tied to Tacony's performance, and another pension plan exists.  I agree that, in many respects, the Plan "creates a classic 'bonus' situation: reward (higher cash value) for superior performance (higher corporate earnings)." *Emmenegger v. Bull Moose Tube Co.*, 197 F.3d 929, 933 (8th Cir. 1999).  But a bonus plan is still covered by ERISA if payments are "systematically deferred to the termination of covered employment or beyond."  29 C.F.R. 2510.3-2(c).  *See also Murphy v. Inexco Oil Co.*, 611 F.2d 570, 575 (5th Cir. 1980) ("The regulation

does interpret ERISA as applicable to some bonus plans, but only those whose payments are systematically deferred to the termination of covered employment or beyond, or so as to provide retirement benefits."). Here, the Plan requires that payments be systematically deferred until after termination of employment or death, so it is not excluded from qualifying as an employee pension benefit plan by the regulation.

Overby compares the Plan to the plans at issue in *Emmenegger* and *Rich v. Shrader*, 823 F.3d 1205 (9th Cir. 2016), in which the Eighth and Ninth Circuits determined that the respective plans were non-ERISA bonus plans. But those cases do not help Overby. In *Emmenegger*, the court's determination that the plan provided bonuses did not conclude its analysis. 197 F.3d at 933. The Eighth Circuit went on to evaluate whether " 'payments [were] systematically deferred' to termination or 'so as to provide retirement income.' " *Id.* (quoting 29 C.F.R. § 2510.3-2(c)). It noted that the plan may have provided post-employment income for some employees, but it also allowed employees to redeem their shares after a certain date for any reason. *Id.* Thus, "there [was] nothing in the terms of the program that would result in such deferral with the purposeful consistency required to make deferral systematic." *Id.* Likewise, the plan in *Rich* did not require participants to defer compensation until termination of employment or beyond. 923 F.3d at 1207. In finding that the plan was not covered by ERISA, the Ninth

Circuit noted that "the mere possibility that income can be deferred does not mandate ERISA coverage."  *Id.* at 1211 (citing *Emmenegger*, 197 F.3d at 933).

Other circuits have similarly reasoned that the plans at issue were not covered by ERISA because payments were not systematically deferred until termination of employment.  *See In re Segovia*, 404 B.R. 896, 917 (N.D. Cal. 2009), *aff'd sub nom. Segovia v. Schoenmann*, 408 F. App'x 61 (9th Cir. 2011); *Oatway v. Am. Int'l Grp., Inc.*, 325 F.3d 184, 189 (3d Cir. 2003); *Murphy*, 611 F.2d at 575; *McKinsey v. Sentry*, 986 F.2d 401, 405-06 (10th Cir. 1993).

By contrast, the Plan here requires that payments be made after termination of employment.  Because the Plan systematically defers payments until after termination of employment or death, the Plan is not an exempt bonus plan, but is an employee pension benefit plan.  Overby's state-law claims are preempted by ERISA, and this court has subject-matter jurisdiction.

Accordingly,

**IT IS HEREBY ORDERED** that Overby's Motion to Remand [8] is **DENIED**.


_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 18th day of February, 2022.