UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BRADLEY OVERBY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:21 CV 1374 CDP |
| | ) |
| TACONY CORPORATION, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM AND ORDER**

Plaintiff Bradley Overby is a former employee of Defendant Tacony Corporation and a participant in Tacony's Stock Appreciation Plan ("the Plan"). After Overby resigned from his position as CFO, he became entitled to a lump sum payment under the Plan. In the sole count in his complaint, Overby alleges that Tacony breached the Plan by paying him $14,390.13 less than it owed him. Tacony moves for summary judgment, arguing that its payment was reasonable under the deferential standard with which I must review its administration of the Plan under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq*. Because the summary judgment record shows that this determination was unreasonable, I will deny the motion and order Tacony to show cause why summary judgment should not be granted against it.

## Background

Tacony offers the Plan to select employees, or "Participants," who can make a substantial contribution to the financial success of the company. The Plan is designed to retain and motivate Participants by tying their long-term incentives to the performance of the Company's common stock. To that end, the Plan allows Tacony's CEO to grant to a Participant stock appreciation rights, or "Units," that are to be paid to the Participant ninety days after his employment is terminated. Each Unit is worth the difference between the value of one share of Tacony's Common Stock on the date the Unit was granted and the "Book Value" of one share of Tacony's Common Stock on the date the Participant's employment is terminated. (*See* The Plan at §§ 2.19, 2.13, 2.4.) Thus, as the value of Tacony's common stock increases, so does the value of a Participant's Units.

Overby received 250 of these Units by the time he resigned from his position as CFO. On June 22, 2021, Tacony paid Overby what a committee composed of Tacony's CEO and certain Board members ("the Committee") calculated to be the value of those Units: $11,306.00. At issue in this case is how the Committee made that calculation. Specifically, the parties dispute the date Overby's employment was terminated and the Book Value of Tacony stock on that date.

The Plan defines Termination of Employment as

an Associate's separation from service with the Company and all members of the controlled group of companies of which the Company

2

> is a member (generally 50% common control with the Company) as defined in Treasury Regulations under Code section 409A. Generally, termination of employment occurs when there is a reasonable expectation that no further services will be performed or that the level of bona fide services will permanently decrease to no more than 20% of the average level of bona fide services performed over the preceding 36-month period, disregarding any leave of absences of up to six months where there is a reasonable expectation the Associate will return to work.

(*Id.* at § 2.18.)

A Participant's Termination of Employment date, or "Exercise Date," is significant because it determines how the Committee calculates Book Value, "the value of a share of Common Stock of the Company as determined by the Committee based on the Company's audited financial statements." (*Id.* at § 2.7.) The Plan requires the Committee to determine Book Value "as of each Valuation Date," which is defined as "the last day of each calendar year . . ."—"and that value shall be used with respect to all valuations from that Valuation Date until the next Valuation Date." (*Id.* at §§ 2.7, 2.20.) Thus, whether a Participant's employment is terminated before or after the end of a given year affects which Valuation Date the Committee uses to determine Book Value. The Plan explains by providing an illustration:

> if a Participant's Termination of Employment occurs on December 29, 2009, the Book Value as of December 31, 2008 will be used unless there has been an interim Valuation Date after December 31, 2008 and prior to December 29, 2009. If, on the other hand, the Participant's Termination of Employment occurs on February 15, 2010, the Book Value of December 31, 2009 will be used.

3

(*Id.* at § 2.7.)

In a letter accompanying Overby's payment on June 22, 2021, Tacony's new CFO claimed that Overby's employment was terminated on December 14, 2020, the date Tacony received and recognized his resignation. Thus, the Committee used the Book Value as of December 31, 2019, to value Overby's Units. It then determined that the difference in value between one share of Common Stock on the dates Overby's Units were granted and the Book Value of one share of Common Stock on December 31, 2019, multiplied by the number of Overby's Units, was $11,306.00. (*See* ECF 22-1 at p. 14.)

Overby disputed the sum, claiming that his employment was terminated on January 5, 2021, not December 14. To support his claim, he noted, among other things, that his letter of resignation stated his last day of work was January 5, he was physically present and working at Tacony's office until January 5, his final pay statement indicated that he was paid "Regular Hours" through January 5, and none of his duties were re-assigned until January 5. Therefore, according to Overby, the Committee should have used the Book Value as of December 31, 2020, to value his Units. Had the Committee done so, he claims his Units would be worth an additional $14,390.13.

Tacony's CEO responded that the Committee's determination was correct whether Overby's employment was terminated on December 14, 2020, or on

4

January 5, 2021.  She explained that the Plan requires the Committee to use Tacony's audited financial statements to determine Book Value, and Tacony's 2020 audit was not completed until April 28, 2021—113 days after Overby's Exercise Date, and 23 days after Tacony was required to pay Overby.  Thus, the Committee could not determine Book Value as of December 31, 2020.  In the past, when terminations occurred in the first quarter of the fiscal year, the Committee used the Valuation Date for the calendar year preceding the most recently ended calendar year to determine Book Value.  Tacony's CEO claimed that Overby even approved the use of this method while he worked for Tacony: when two plan participants were terminated in the first quarter of 2020, Overby approved calculations of Book Value as of December 31, 2018, to determine the value of their Units.  Thus, the Committee would still use the December 31, 2019, Valuation Date even if Overby's employment were terminated on January 5.

     Overby timely appealed the Committee's determination of his benefits under the Plan.  He again argued that his employment was terminated on January 5, 2021, and that the Committee's use of the Book Value of Tacony stock on December 31, 2019, was not consistent with the clear terms of the Plan.  He acknowledged that the Plan may require payments to be made before audited financial statements for the most Valuation Date become available, but he noted that he was not paid until

5

six months after his Termination of Employment, well after the audited financial statements became available.

On September 17, 2021, the Committee denied his appeal for the same reasons described in its previous response. Ten days later, Overby sued Tacony in state court for breach of contract. After Tacony removed the case to this court, Overby filed a motion to remand. I denied his motion because his breach of contract claim is completely preempted by ERISA. (*See* ECF 15.) I reasoned that the Plan is an employee pension benefit plan covered by under ERISA, and Overby's breach of contract claim duplicates, supplements, or supplants ERISA's civil remedy provisions. ERISA § 502(a)(1)(B); 29 U.S.C. § 1132(a)(1)(B). Thus, ERISA converts Overby's state law complaint "into one stating a federal claim," that is properly removed to federal Court. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004).

Tacony now moves for summary judgment, reiterating many of the arguments described in the correspondence above. To support its motion, it filed a copy of the Plan, its correspondence with Overby, and a May 18, 2021, email from Tacony's Accounting Manager requesting that Overby be paid "[n]ow that the audit is complete[.]" (ECF 22-1 at p. 22.) In response, Overby filed the same May 18, 2021, email filed by Tacony, his final paycheck showing that his Termination

Date was January 5, 2021, and a signed affidavit averring that he worked until that date.  (ECF 24).

## Summary Judgment Standard

Summary judgment must be granted when the pleadings and proffer of evidence demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).  I must view the evidence in the light most favorable to the nonmoving party and accord him the benefit of all reasonable inferences.  *Scott v. Harris,* 550 U.S. 372, 379 (2007).  The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *Celotex Corp.*, 477 U.S. at 322.

## Discussion

ERISA § 502(a)(1)(B) provides that "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the plan, or to clarify his rights to future benefits under the terms of the plan."  As I ruled in my previous order, Overby's breach of contract claim duplicates this provision and is completely preempted.

(ECF 15). Therefore, his claim is properly recharacterized as an action under ERISA § 502 seeking to recover benefits due under the Plan. *See Prudential Ins. Co. of America v. National Park Medical Center, Inc.*, 413 F.3d 897, 914 (8th Cir. 2005).

A court reviews a denial of benefits using a *de novo* standard "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "When a plan grants an administrator this type of discretion, the district court reviews the 'administrator's construction of the plan terms for an abuse of discretion[.]'" *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 717 (8th Cir. 2014) (quoting *Tussey v. ABB, Inc.*, 746 F.3d 327, 333 (8th Cir. 2014)).

Here, the Plan expressly grants the Committee "the authority and responsibility to interpret and construe the Plan and to decide all questions arising thereunder[.]" (The Plan at § 7.1.) Overby does not argue that this is an invalid discretionary clause. Therefore, I must apply an abuse of discretion standard.

When reviewing an administrator's denial of benefits for abuse of discretion, the court must uphold the administrator's decision if the decision was reasonable. *Darvell v. Life Ins. Co. of N. Am.*, 597 F.3d 929, 935 (8th Cir. 2010). To be reasonable, the administrator's decision must be supported by substantial evidence,

8

that is, "more than a scintilla but less than a preponderance." *Khoury v. Group Health Plan, Inc.*, 615 F.3d 946, 952 (8th Cir. 2010). The Court must also consider:

> (1) whether the administrator's language is contrary to the clear language of the plan; (2) whether the interpretation conflicts with the substantive or procedural requirements of ERISA; (3) whether the interpretation renders any language in the plan meaningless or internally inconsistent; (4) whether the interpretation is consistent with the goals of the plan; and (5) whether the administrator has consistently followed the interpretation.

*Id.* (citing *Finley v. Special Agents Mut. Ben. Ass'n, Inc.*, 957 F.2d 617, 621 (8th Cir. 1992)). Moreover, when the plan administrator both determines whether an employee is eligible for benefits and pays those benefits, as Tacony did here, "this dual role creates a conflict of interest," that the Court must consider as a factor in the abuse of discretion analysis. *Metro. Line Ins. v. Glenn*, 554 U.S. 105, 108 (2008); *see also Boyd v. ConAgra Foods, Inc.*, 879 F.3d 314, 320 (8th Cir. 2018).

Although the parties do not explicitly discuss these factors, their arguments relate to factors one, three, and five. Tacony argues that, even if Overby's employment was terminated on January 5, 2021, the Committee's application of the Plan was reasonable because it did not have access to Tacony's audited financial statements ninety days after Overby's employment was terminated, and its use of the Book Value as of December 31, 2019 is consistent with the

9

Committee's previous practice.[1]  Overby responds that Tacony's interpretation and application of the Plan is contrary to the Plan's plain language, which requires the Committee to use the Book Value of Tacony's shares on December 31, 2020, to value his Units.  He claims that Tacony's previous practice referenced in their correspondence is irrelevant because he was paid 55 days after Tacony's 2020 audited financial statements were available.[2]

    I agree with Overby that the language of the Plan is clear.  As noted above, Section 2.7 provides that "Book Value shall be determined as of each Valuation Date and that value shall be used with respect to all valuations from that Valuation Date until the next Valuation Date."   It specifically addresses which Valuation Date should be used when a Participant's Termination of Employment is within the first quarter of the financial year and states as an example: "If . . . the Participant's Termination of Employment occurs on February 15, 2010, the Book Value as of December 31, 2009 will be used."

---

[1] Alternatively, Tacony argues that Overby's claim conflicts with ERISA because Overby seeks monetary compensatory damages, and such damages are not recoverable under ERISA.  This argument is contradicted by Tacony's previous argument that Overby's claim "falls squarely within ERISA's exclusive remedy provisions," because "Plaintiff is a plan participant seeking to enforce his rights under the plan."  (*See* ECF 10 at p. 5.)

[2] Overby also argues that evidence of past administration of the Plan is barred by the parol evidence rule.  But, even if this rule were applicable, "[t]he parol evidence rule only applies to prior or contemporaneous oral agreements and does not preclude evidence of the parties' statements or behavior after the execution of the contract." *Topper v. Midwest Div., Inc.*, 306 S.W.3d 117, 131 (Mo. Ct. App. 2010).  An administrator's previous interpretation of an employee pension benefit plan is salient evidence of reasonableness in the Court's abuse of discretion analysis.

The Committee's use of the Book Value as of December 31, 2019, to value Overby's Units is inconsistent with this language. Viewing the summary judgment record in the light most favorable to Overby, as I must for the purposes of this motion, Overby's Exercise Date was January 5, 2021. On January 5, the most recent Valuation Date was December 31, 2020. Therefore, the Plan required the Committee to use the Book Value as of December 31, 2020, to value Overby's Units. Tacony's failure to do so is afforded "significant weight" in the abuse of discretion analysis. *Lickteig v. Bus. Men's Assur. Co. of Am.*, 61 F.3d 579, 585 (8th Cir. 1995).

Nevertheless, Tacony argues that it is reasonable for the Committee to determine Book Value using previous Valuation Dates when audited financial statements for the most recent Valuation Date are unavailable. It does not explain how that interpretation is reconcilable with the language in Section 2.7 described above—in fact, Tacony does not advance an alternative interpretation of this language anywhere in its briefing or in its denial of Overby's appeal. Instead, Tacony essentially argues that the clear language of the Plan imposes contradictory requirements. On the one hand, Section 2.7 requires the Committee to rely on its audited financial statements to determine Book Value; on the other, Section 6.1 requires the Participant to be paid ninety days following his Termination of Employment. If a Participant's Termination of Employment occurs in the first

11

quarter, Tacony reasons that audited financial statements for the most recent Valuation Date may be unavailable. Tacony implies that the Plan must allow recourse to previous Valuation Dates for the Committee to timely pay the Participant under such circumstances.

As an initial matter, Tacony leaves unexplained why it cannot complete its audited financial statements in the first ninety days of the year, or why its potential inability to do so allows it to depart from the clear language of the Plan. But even if it were reasonable for the Committee to use previous Valuation Dates to determine Book Value when audited financial statements for the latest Valuation Date are unavailable, that is simply not the case here. As Overby notes, Tacony did not pay Overby until June 22, 2021, 78 days after it was required to by Section 6.1. By that time, the audited financial statements for December 31, 2020, had been available for 55 days. The May 18, 2021, email from a Tacony Account Manager requesting that Overby be paid "[n]ow that the audit is complete" shows that this information was available before the Committee valued Overby's Units. (*See* ECF 22-1 at p. 14.) Nor does Tacony offer any argument that the Plan requires the Committee to determine Book Value only using audited financial statements that were available on the Participant's Exercise Date.

Tacony's argument that its interpretation of the Plan is consistent with its prior practice fails for a related reason. In Tacony's correspondence with Overby,

12

it notes two instances in which Participants were terminated in the first quarter of 2020 and the Committee used of the Book Value of Tacony Stock as of December 31, 2018, to determine the value of their Units.  But it provides virtually no details about these prior valuations, including whether Tacony paid the Participants after the audited financial statements for the last Valuation Date were available.  Thus, I cannot determine whether the Committee's interpretation in Overby's situation is consistent with the Committee's previous interpretation of the Plan.

Tacony's interpretation of the Plan is inconsistent with the clear language of the Plan, would render much of the language of Section 2.7 meaningless, and is not demonstrably consistent with its prior practice.  I am therefore unable to conclude that its interpretation of the Plan was reasonable as a matter of law.  On the contrary, the evidence before the Court shows that the Committee's use of the December 31, 2019, Valuation Date was an abuse of discretion.

Under Rule 56(f)(3), Federal Rules of Civil Procedure, I may consider summary judgment on my own after identifying material facts that may not be genuinely in dispute.  Here, it is not genuinely disputed that Overby's Termination of Employment date was January 5, 2021.  Overby's final paycheck states his Termination Date was January 5, 2021, and his affidavit and correspondence with Tacony show that he continued to perform services for Tacony until then.  (ECF 24, 22-1 at p. 15).  Moreover, the Committee's determination that Overby's

13

employment was terminated on December 14, 2020, appears to be erroneously based on the date Tacony received Overby's letter of resignation, rather than the date "there is a reasonable expectation that no further services will be performed or that the level of bona fide services will permanently decrease to no more than 20% of the average level of bona fide services performed over the preceding 36-month period." In fact, Tacony does not provide any evidence that it reasonably expected no further services from Overby on December 14.

These facts appear to support judgment against Tacony on Overby's claim. They show that the Committee's Termination of Employment date determination is unsupported by substantial evidence, and, as explained above, it abused its discretion by failing to value Overby's Units as provided by the Plan. Because I may not enter summary judgment on my own before giving notice and a reasonable time to respond, I will order Tacony to show cause within (30) days why summary judgment should not be granted against it under Rule 56(f)(3), Federal Rules of Civil Procedure.

Accordingly,

**IT IS HEREBY ORDERED** that Tacony's Motion for Summary Judgment [20] is **DENIED**.

**IT IS FURTHER ORDERED** that <u>**within thirty (30) days of the date this Memorandum and Order**</u>, Tacony shall show cause why summary judgment

should not be granted against it under Rule 56(f)(3), Federal Rules of Civil

Procedure, on Overby's claim.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 30th day of March 2023.